UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| CASE NO.: CV 15-03480 SJO (AGRx) | DATE: October 1, 2015 |
| TITLE: Axis Insurance Company, et al. v. Michael A. Yedor | |

========================================================================
PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz
Courtroom Clerk

Not Present
Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**

Not Present

**COUNSEL PRESENT FOR DEFENDANT:**

Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT** [Docket No. 22]

This matter is before the Court on Plaintiffs Axis Insurance Company ("Axis") and Federal Insurance Company's ("Federal") (collectively, "Plaintiffs") Motion for Entry of Default Judgment ("Motion"), filed on August 27, 2015. Defendant Michael A. Yedor ("Yedor" or "Defendant") has not filed a response to the Motion. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for October 5, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** the Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This action arises from a fraudulent invoicing scheme perpetrated by Yedor, whereby he embezzled $47,494,918 from Northwest Airlines Corporation ("Northwest") and Delta Air Lines, Inc. after it merged with Northwest in 2009 (the merged company is referred to hereinafter as "Delta"). (Compl. ¶ 6, ECF No. 3.)

Between at least 1992 and December 2013, Yedor conspired with Paul Anderson ("Anderson"), the supervisor of Delta's Radio Group ("Radio Group"), to submit false and fraudulent invoices to Delta's Radio Group. (Compl. ¶¶ 6-8.) Yedor used the fictitious company name Airborne Voice & Data Communication Services, Inc. ("Airborne") as a vendor which purportedly provided goods and services to the Radio Group. (Compl. ¶ 9.) Both Yedor and Anderson knew that Airborne had not provided any goods or services. (Compl. ¶ 10.) Yedor sent the invoices directly to Anderson, who concealed them from the Radio Group and used his position of authority to approve payments to Airborne. (Compl. ¶¶ 11-12.) Checks totaling $47,494,918 were issued by Delta and delivered to Yedor at Airborne's address in Los Angeles, California. (Compl. ¶ 13.) Yedor "kicked back" a portion of the funds to Anderson. (Compl. ¶ 15.) Delta discovered the fraudulent scheme in or about November 2013 and terminated Anderson. (Compl. ¶¶ 16-17.)

Yedor and Anderson were indicted in connection with the fraudulent invoicing scheme on June 10, 2014 (the "Criminal Case"). (*See generally* Decl. of Christie M. Bird in Supp. of Mot. ("Bird Decl.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | |
|---|---|
| CASE NO.:   CV 15-03480 SJO (AGRx) | DATE: October 1, 2015 |

¶ 9, Ex. 2 Criminal Indictment, ECF No. 22-2.)  Yedor pleaded guilty to and was adjudicated guilty of conspiracy to commit mail fraud pursuant to 18 U.S.C. section 1349, and was sentenced on January 9, 2015.  (*See generally* Bird Decl. ¶ 12, Ex. 5 Amended Judgment & Commitment ("Am. J").)  Yedor was ordered to make restitution immediately in the amount of $37,195,414.64, to be paid jointly and severally with Anderson, as follows:  $21,494,918 to Axis, then after full payment to Axis, $15,700,496.64 to Federal.  (Am. J. 6; Bird Decl. ¶ 12, Ex. 6 Order Granting Mot. to Am. J. Re Distribution of Restitution 1.)

At all relevant times, Federal insured Delta under Executive Protection Portfolio Policy no.: 8208-3152 ("Primary Policy").  (Decl. of Michael A. Maillet in Supp. of Mot. ("Maillet Decl.") ¶ 3, ECF No. 22-3.)  Axis insured Delta under Excess Policy no.: MNN717345/01/2013 ("Excess Policy"). (Decl. of Frances Almanzar Rivera ("Rivera Decl.") ¶ 3, ECF No. 22-5.)

Delta made claims for $47,494,918, and Plaintiffs determined that Delta had a covered loss under their respective policies.  (*See generally* Maillet Decl. ¶ 4; Rivera Decl. ¶ 15.)  After applying the applicable $1 million deductible, Federal paid Delta $25 million pursuant to the Primary Policy.[1] (*See generally* Maillet Decl. ¶ 5, Ex. 1 Federal's Confirmation of Payment to Delta ("Federal Payment"), ECF No. 22-4.)  Then, under the Excess Policy, Axis paid Delta its excess loss of $21,494,918.  (Decl. of Frances Almanzar Rivera ("Rivera Decl.") ¶ 16, Ex. 5 Axis' Cancelled Check to Delta ("Axis Payment"), ECF No. 22-6.)  The payments by Federal and Axis totaled $46,494,918 ($47,494,918, less the applicable $1 million deductible).  (Compl. ¶ 23.)

In consideration of their payments, Delta assigned to Axis and Federal all of its rights, title, and interest relating to the loss, giving Axis the first right of recovery until it is fully reimbursed for its payment of $21,494,918, and giving Federal the second right of recovery after Axis receives full reimbursement until Federal is fully reimbursed for its payment of $25 million.  (Maillet Decl. ¶ 6, Ex. 2 Federal Settlement Agreement 3; Rivera Decl. ¶ 17, Ex. 6 Axis Settlement Agreement 3.)  Plaintiffs allege that, to date, Yedor has not made restitution to Federal or Axis.[2]  (Compl. ¶ 26.)

Plaintiffs filed their Complaint on May 8, 2015, alleging the following causes of action: (1) conversion (Compl. ¶¶ 27-30); (2) unjust enrichment and constructive trust (Compl. ¶¶ 31-33); (3) fraud (Compl. ¶¶ 34-38); (4) money had and received (Compl. ¶¶ 39-41); and (5) equitable subrogation.  (Compl. ¶¶ 42-46).  Yedor was personally served with the Complaint on June 4, 2015 at the Federal Correctional Institution Terminal Island, where Yedor is presently incarcerated. (*See generally* Proof of Service of Compl., ECF No. 14.)

---

[1] The Primary Policy had a limit of liability of $25 million.  (Maillet Decl. ¶ 3.)

[2] The Court takes judicial notice of the fact that there is no record of payment of restitution in the docket of the Criminal Case, styled *United States v. Michael A. Yedor and Paul Anderson*, CR No. 14-216 TCB, Northern District of Georgia, Atlanta Division.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:** <u>CV 15-03480 SJO (AGRx)</u>          **DATE:** <u>October 1, 2015</u>

Yedor did not file a response to the Complaint or otherwise defend against this action, and did not seek additional time within which to respond. (Bird Decl. ¶ 5.) On July 6, 2015, the Court Clerk entered default against Yedor. (Entry of Default, ECF No. 17.) Plaintiffs seek default judgment against Yedor in the sum of $46,494,918 and interest and costs of this action. (Mot. 13.)

II.     <u>DISCUSSION</u>

"Entry of default judgment is governed by [Federal Rule of Civil Procedure] 55 and is left to the trial court's sound discretion." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980)). First, the plaintiff must establish default by affidavit or otherwise, after which the Court Clerk enters default. Fed. R. Civ. P. 55(a). Second, the plaintiff must file a motion for default judgment if the plaintiff's claim is for a sum that is not certain or a sum that cannot be made certain by computation. Fed. R. Civ. P. 55(b).

    A.     <u>Procedural Requirements for Default Judgment</u>

Applications for default judgment must be accompanied by a declaration that includes the following information:

>    (a) When and against what party the default was entered;
>    (b) The identification of the pleading to which default was entered;
>    (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;
>    (d) That the Servicemembers Civil Relief Act (the "SCRA") (50 U.S.C. App. § 521) does not apply; and
>    (e) That notice has been served on the defaulting party, if required by [Fed. R. Civ. P.] 55(b)(2).

L.R. 55-1. Plaintiff has satisfied the procedural requirements by establishing that: (1) default was entered against Yedor on July 6, 2015; (2) default was entered for Yedor's failure to respond to the Complaint; (3) Yedor is not an infant or incompetent person; (4) the SCRA does not apply to Yedor; and (5) notice of entry of default was served on Yedor.[3] (Bird Decl. ¶¶ 5-8.) Accordingly, the procedural requirements of Local Rule 55-1 have been met.

    B.     <u>Substantive Requirements for Default Judgment</u>

---

    [3] Plaintiffs were not required to serve Yedor with notice of its Motion, since Yedor has not appeared in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority \_\_\_\_\_
Send \_\_\_\_\_
Enter \_\_\_\_\_
Closed \_\_\_\_\_
JS-5/JS-6 \_\_\_\_\_
Scan Only \_\_\_\_\_

CASE NO.: CV 15-03480 SJO (AGRx)      DATE: October 1, 2015

The Court's decision to grant or deny default judgment is discretionary. *Aldabe*, 616 F.2d at 1092. In exercising its discretion, the Court considers the following seven factors:

    (1)    The possibility of prejudice to the plaintiff;
    (2)    The merits of plaintiff's substantive claim;
    (3)    The sufficiency of the complaint;
    (4)    The sum of money at stake in the action;
    (5)    The possibility of a dispute concerning material facts;
    (6)    Whether the default was due to excusable neglect; and
    (7)    The strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Once the clerk has entered a party's default, "the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Castworld*, 219 F.R.D. at 498 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)). The Court considers each *Eitel* factor in turn.

    1.    <u>Possibility of Prejudice to Plaintiff</u>

Under the first *Eitel* factor, the Court examines whether a plaintiff will be prejudiced if the request for entry of default judgment is denied. *Eitel*, 782 F.2d at 1471. A plaintiff who is denied a default judgment and is subsequently left without other recourse for recovery has a basis for establishing prejudice. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Yedor has failed to appear, file a responsive pleading, or otherwise defend against this action. Thus, Plaintiffs will suffer prejudice absent an entry of default judgment. *See Sennheiser Elec. Corp. v. Eichler*, No. CV 12-10809 MMM, 2013 WL 3811775, at *3 (C.D. Cal. Jul. 19, 2013) ("Because [defendant] has failed to appear or defend, [plaintiff] would be left without a remedy if its motion for default judgment were denied.").

///
///

    2-3.    <u>Merits of the Substantive Claim and Sufficiency of the Complaint</u>

The second and third *Eitel* factors focus on the merits of a plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. Together, "these two factors require that a plaintiff 'state a claim on which the plaintiff may recover.'" *Cal. Sec. Cans*, 238 F. Supp. 2d at 1175 (citations omitted). The Court examines whether Plaintiffs have sufficiently pleaded facts that permit recovery on their claims.

    a.    <u>Conversion</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  ____
Send      ____
Enter     ____
Closed    ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:   CV 15-03480 SJO (AGRx)              DATE: October 1, 2015

Under California law, the tort of conversion is defined as "any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999) (quoting *Igauye v. Howard*, 114 Cal. App. 2d 122, 126 (1952)).

In their Complaint, Plaintiffs allege that Yedor "wrongfully and intentionally converted and appropriated to himself and for his own benefit the funds and property of [Delta]." (Compl. ¶ 28.) Such conversion was "wrongful and inconsistent with [Delta]'s rights of ownership and possession thereto." (Compl. ¶ 29.) As a result of these false and fraudulent invoices, Delta suffered damages in the amount of $47,494,918 in stolen funds, which claim has been assigned and subrogated to Plaintiffs. (Compl. ¶ 30.) Plaintiffs have sufficiently alleged the conversion claim. As such, Plaintiffs have sufficiently alleged their claim for conversion.

      b.    Unjust Enrichment and Constructive Trust

A claim for unjust enrichment requires the "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) (citation omitted). A constructive trust is an equitable remedy that "compel[s] the transfer of property by one who is not justly entitled to it to one who is." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1485 (2014). Whether to impose a constructive trust is an equitable issue for the court. *Id.* (citation omitted).

Plaintiffs allege that Yedor requested payments from Delta to Airborne for goods and services purportedly provided through false and fraudulent invoices. (Compl. ¶ 10.) As a result of Yedor's fraudulent scheme, Yedor was unjustly enriched in the amount of at least $47,494,918. (Compl. ¶ 33.) Plaintiffs seek the imposition of a constructive trust as an equitable remedy, since Plaintiffs compensated Delta for the loss. (*See* Compl. ¶¶ 23, 33.) The Court finds that a constructive trust is appropriate "to prevent [Yedor] from taking advantage of his own wrongdoing." *See Communist Party v. Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995). Plaintiffs' allegations are sufficient to state a claim for unjust enrichment and constructive trust.

      c.    Fraud

"The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citation omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority   _____
Send       _____
Enter      _____
Closed     _____
JS-5/JS-6  _____
Scan Only  _____

**CASE NO.:** **CV 15-03480 SJO (AGRx)**           **DATE:** **October 1, 2015**

Plaintiffs have satisfied the elements of their fraud claim. First, Yedor created false and fraudulent invoices requesting payments from Delta, representing that Airborne was a vendor that provided goods and services to the Radio Group. (*See* Compl. ¶¶ 9-10.) Second, Yedor knew that Airborne had not provided any goods or services. (Compl. ¶ 10.) Third, Yedor perpetrated the embezzlement scheme by abusing Anderson's authority and access to Delta's process for paying invoices to vendors. (Compl. ¶¶ 35-36.) Fourth, Delta "reasonably relied on the honesty and integrity of the false and fraudulent Airborne invoices submitted by Yedor." (Compl. ¶ 37.) Finally, Delta suffered damages in the amount of $47,494,918, and Plaintiffs compensated Delta for the loss. (Compl. ¶¶ 23, 38.) In sum, Plaintiffs have sufficiently alleged their claim for fraud.

        d.       <u>Money Had and Received</u>

An action for money had and received "is available in a great variety of situations," *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011), and arises wherever "one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975) (citation omitted).

Yedor embezzled funds belonging to Delta in the sum of $47,494,918 and "became indebted to Delta for money and property wrongfully had and received by him which rightfully belonged to [Delta]." (Compl. ¶¶ 6, 40.) Plaintiffs compensated Delta for the loss and are assignees and subrogees of Delta's claims. (Compl. ¶¶ 23-24, 41.) As such, this claim is sufficiently pleaded.

        e.       <u>Equitable Subrogation</u>

The elements of a claim for equitable subrogation are as follows:

> (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was not primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

Case 2:15-cv-03480-SJO-AGR Document 24 Filed 10/01/15 Page 7 of 11 Page ID #:463

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV 15-03480 SJO (AGRx)          DATE: October 1, 2015

*Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1292 (1998) (citations omitted).

Plaintiffs have satisfied the elements of equitable subrogation by establishing the following: (a) the insured, Delta, suffered a loss caused by Yedor's acts of theft, embezzlement, conversion, fraud, and misappropriation, (Compl. ¶ 43); (b) Plaintiffs were not liable for the claimed loss (Compl. ¶ 43); (c) Plaintiffs paid Delta $46,494,918 for said loss, (Compl. ¶ 44); (d) Plaintiffs paid Delta pursuant to their respective policies, (Compl. ¶ 45); (e) Delta had an existing, assignable cause of action against Yedor, which it assigned and subrogated to Plaintiffs, (Compl. ¶ 24); (f) Plaintiffs suffered $46,494,918 in damages caused by the acts of Yedor, (Compl. ¶ 44); (g) Yedor caused the loss to Delta for which Plaintiffs paid, (*see* Compl. ¶¶ 43-45), such that the equitable position of Yedor is "inferior" to that of Plaintiffs, *see Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.*, 52 Cal. App. 4th 553, 556 (1997); and (h) Plaintiffs' damages are in the sum of $46,494,918, (Compl. ¶ 41), which is the amount Plaintiffs paid Delta. Plaintiffs have sufficiently pleaded the elements for their claim for equitable subrogation.

Taking Plaintiffs' well-pleaded factual allegations as true and considering Yedor's conviction in the Criminal Case–which surrounds the same fraudulent acts alleged in the Complaint–the Court finds that Plaintiffs have sufficiently stated claims upon which to recover, thereby satisfying the second and third *Eitel* factors.

    4.    <u>Amount of Damages</u>

For the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [the d]efendant's conduct." *Cal. Sec. Cans*, 238 F. Supp. 2d at 1176. If the sum of money at issue is "reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is warranted." *ACS Recovery Servs., Inc. v. Kaplan,* No. CV 09-01304 JSW, 2010 WL 144816, at *6 (N.D. Cal. Jan. 11, 2010) (citation omitted). While the allegations in a complaint are taken to be true for the purposes of default judgment, courts must make specific findings of fact in assessing damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Plaintiffs seek judgment in the amount of $46,494,918, which reflects the amount that Plaintiffs compensated Delta for the stolen funds. (Mot. 11.) This sum is properly documented in the record. (*See* Federal Payment; Axis Payment.) Further, the amount sought is both reasonably proportionate and directly attributed to the harm Yedor caused Delta.[4] (Rivera Decl. ¶ 5, Ex. 3 ("Proof of Loss Document Index") 3, ECF No. 22-6.) Thus, this factor weighs in favor of entry of default judgment.

---

[4] As noted earlier, Delta suffered damages in the sum of $47,494,418, and the applicable $1 million deductible was applied before Plaintiffs paid Delta under their respective policies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

CASE NO.: **CV 15-03480 SJO (AGRx)**        DATE: **October 1, 2015**

Plaintiffs also seek filing fees paid to the Court Clerk and costs of service of process pursuant to Local Rules 54-3.1 and 54-3.2, respectively. (Mot. 11.) Generally, the prevailing party is entitled to costs other than attorneys' fees. Fed. R. Civ. P. 54 (d)(1). The "prevailing party" is the party in whose favor judgment is rendered, unless otherwise determined by the Court. L.R. 54-1. Because, as discussed herein, default judgment is rendered in Plaintiffs' favor, Plaintiff would be entitled to the filing fees and costs of service of process.[5] Since the Local Rules properly document these costs, Yedor was apprised that he would be subject to these costs. Thus, this factor weighs in favor of granting default judgment.

        5.        Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. When a complaint and motion for default judgment are unopposed, the factor is neutral because the possibility of a dispute is unknown. *See Bd. of Trs. of Laborers Health & Welfare Trust Fund v. Perez*, No. CV 10-02002, 2011 WL 6151506, at *8 (N.D. Cal. Nov. 7, 2011). Where a plaintiff has filed a well-pleaded complaint and the clerk has entered default against the defendant, "no dispute [is] raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is, at best, remote." *Castworld*, 219 F.R.D. at 500.

As discussed above, Plaintiffs have filed a well-pleaded Complaint, and default has been entered against Yedor. Yedor's prior conviction in the Criminal Case supports a finding that there is likely no genuine dispute of material fact. As to damages, Yedor was ordered in the Criminal Case to make restitution in the amount of $37,195,414.64 to Axis and Federal. (*See generally* Am. J. & Commitment.) Delta later proved to its insurers that its loss actually totaled $47,494,918. (*See* Rivera Decl. ¶ 4, Ex. 2 ("Am. Proof of Loss") 1, ECF No. 22-6.) Since Yedor has not appeared in this action to refute the amount, this factor is neutral.

        6.        Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether Defendant's default may have been the product of excusable neglect. *Eitel*, 782 F.2d at 1471-72. The possibility of excusable neglect is remote and favors default judgment where the defendant has been properly served or the defendant is aware of the lawsuit. *Landstar Ranger, Inc. v. Parth Enters.*, 725 F.Supp.2d 916, 922 (C.D. Cal. 2010) (defendants properly served); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (defendants clearly aware of pending litigation).

---

[5] Whether the Court will award Plaintiffs said fees and costs is discussed in section II.B.3, *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 15-03480 SJO (AGRx)</u>     **DATE:** <u>October 1, 2015</u>

According to the proof of service, Yedor was properly served on June 4, 2015 at his place of incarceration.  (*See generally* Proof of Service of Compl.)  Yedor failed to respond.  Thus, this factor weighs in favor of granting default judgment.  *See, e.g., Marcelos v. Dominguez*, No, CV 08-00056 WHA, 2009 WL 230033, at *4 (N.D. Cal. Jan. 29, 2009) (finding no excusable neglect where defendant was properly served in jail and failed to respond).

       7.      <u>Public Policy Favoring Decision on the Merits</u>

The final *Eitel* factor requires the Court to consider the strong federal policy in favor of making decisions on the merits.  *Eitel*, 782 F.2d at 1472.  However, courts recognize that "this preference, standing alone, is not dispositive."  *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund,* No. CV 94-02684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)).  Under Rule 55(a), a case may be terminated before hearing the merits whenever a defendant fails to defend an action.  *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible.").

Because Yedor failed to respond to or defend this action in any way, this public policy is not implicated and does not preclude the Court from entering default judgment.  *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

In sum, the application of the *Eitel* factors entitles Plaintiffs to default judgment against Yedor.

      B.      <u>Relief Sought</u>

The Court now turns its attention to the relief sought by Plaintiff.  Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Additionally, the pleadings must specifically state the relief sought, *see* Fed. R. Civ. P. 8(a)(3), and Plaintiff "must 'prove up' the amount of damages."  *Philip Morris USA Inc. v. Banh*, No. CV 03-04043 GAF, 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005).  The Court, therefore, independently assesses the sufficiency of Plaintiffs' evidence in support of its claim for relief.

       1.      <u>Damages</u>

In the instant Motion, Plaintiffs request $46,494,918 and the interest and costs of this action, which they requested in the Complaint.  (*See* Compl. 8-9.)

Plaintiffs have provided evidence of the following.  Yedor's acts as described in the Criminal Case and the Complaint caused Delta to lose $47,494,918.  (*See generally* Am. Proof of Loss 1; Proof of Loss Document Index 3.)  Plaintiffs compensated Delta in the amount of $46,494,918 pursuant to their respective policies and have not received restitution from Yedor.  (Rivera Decl. ¶ 16;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  CV 15-03480 SJO (AGRx)          DATE: October 1, 2015

Maillet Decl. ¶ 5; Compl. ¶ 26.)  As a result, Plaintiffs were damaged in the amount they paid out to Delta.  Based on these factual allegations, the Court is satisfied that Plaintiffs have provided evidence to prove the requested damages in the amount of $46,494,918.

  2.  Pre-Judgment Interest

In diversity cases, state law governs all awards of pre-judgment interest.  *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir.1992).  "Interest may be awarded as an element of damages sustained by reason of fraud where the amount of the plaintiff's loss and the date from which interest, if awarded, should be computed are capable of definite ascertainment."  *Smith v. Rickards*, 149 Cal. App. 2d 648, 654 (1957); *see* Cal. Civ. Code § 3288 (permitting pre-judgment interest "in every case of . . . fraud").  Such interest shall run "from the time the plaintiff parted with the money or property on the basis of the defendant's fraud."  *Nordahl v. Dep't of Real Estate*, 48 Cal. App. 3d 657, 665 (1975).  Absent a statute to the contrary, California's default legal interest rate is seven percent per annum.  *Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577, 582 (C.D. Cal. 1986) (citing Const. art. XV § 1).  Whether pre-judgment interest should be awarded lies within the discretion of the trial court.  *State v. Day*, 76 Cal. App. 2d 536, 556 (1946).

This is a diversity action and involves the fraudulent acts of Yedor.  (*See* Compl. ¶¶ 4, 6.)  Although Plaintiffs do not specify the amount of pre-judgment interest sought, the Court exercises its discretion in awarding pre-judgment interest to Plaintiffs, as the amount of Plaintiffs' loss and the start date of accrual are ascertainable from the pleadings.  *See Anglo Cal. Nat'l Bank of S.F. v. Lazard*, 106 F.2d 693, 705 (9th Cir. 1939) ("The discretion of the trial court was properly invoked for the court could grant relief embraced within the issues including a judgment for interest though not prayed for.").  Federal parted with the sum of $25 million on October 17, 2014 when it compensated Delta for Yedor's fraud.  (*See* Federal Payment 1.)  Axis parted with the sum of $21,494,918 on October 29, 2014.  (*See generally* Axis Payment.)  Therefore, pre-judgment interest, at a rate of seven percent per annum, shall accrue:  (1) on $25 million from October 17, 2014 until entry of judgment; and (2) on $21,494,918 from October 29, 2014 until entry of judgment.

///

  3.  Post-Judgment Interest

Post-judgment interest is governed by federal law, even in diversity cases.  *Northrop Corp. v. Triad Int'l Mktg. S.A.*, 842 F.2d 1154, 1155-56 (9th Cir.1988) (citations omitted).  Under federal law, post-judgment interest is mandatory for a judgment in a civil case recovered in a district court.  28 U.S.C. § 1961; *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citation omitted). Post-judgment interest applies to the entire judgment, including principal, pre-judgment interest, attorneys' fees, and costs.  *Air Separation*, 45 F.3d at 290-91.  The post-judgment interest rate is set "at a rate equal to the weekly average 1-year constant maturity

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

_____
_____
_____
_____
_____
_____

**CASE NO.:** <u>CV 15-03480 SJO (AGRx)</u>          **DATE:** <u>October 1, 2015</u>

Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). For the calendar week preceding the date of default judgment, the rate was 0.34%. Plaintiffs are entitled to post-judgment interest at this rate.

      4.      <u>Costs of the Action</u>

Plaintiffs also seek filing fees paid to the Court Clerk and costs of service of process in this action. Although Plaintiffs are entitled to these costs as the prevailing party, Plaintiffs fail to specify an amount or otherwise sufficiently document their request. Accordingly, the Court denies Plaintiffs' request for the costs of this action.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Entry of Default Judgment in its entirety against Yedor. The Court **HEREBY ORDERS** Yedor to pay Plaintiffs the sum of $46,494,918 in damages, and of that award, Axis is entitled to receive the first $21,494,918, and after Axis has received said amount, Federal is entitled to receive the next $25 million. Pre-judgment interest at a rate of seven percent per annum shall accrue on $25 million from October 17, 2014 until entry of judgment, and on $21,494,918 from October 29, 2014 until entry of judgment. Post-judgment interest shall accrue on this judgment pursuant to 28 U.S.C. § 1961(a).

IT IS SO ORDERED.